1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11    BALJIT ATHWAL, et al.,                        No. 1:15-cv-00311-TLN-BAM

12                   Plaintiffs,

13            v.                                     **ORDER**

14    COUNTY OF STANISLAUS, et al.,

15                   Defendants.

16

17          This matter is before the Court on two Motions to Dismiss: (1) Defendants County of

18    Stanislaus ("County"), Stanislaus County District Attorney's Office ("County DA's Office"),

19    Birgit Fladager ("Fladager"), Kirk Bunch ("Bunch"), Dale Lingerfelt ("Lingerfelt"), and Steve

20    Jacobson's ("Jacobson") (collectively, "County Defendants") Motion to Dismiss (ECF No. 172);

21    and (2) Defendants City of Modesto ("City"), Jon Evers ("Evers"), and Galen Carroll's

22    ("Carroll") (collectively, "City Defendants") Motion to Dismiss (ECF No. 174).[1]  Plaintiffs Baljit

23    Athwal ("Bobby") and Daljit Atwal ("Daljit") (collectively, "Plaintiffs") oppose each motion.

24    (ECF Nos. 194, 195.)  Defendants filed replies.  (ECF Nos. 199, 200.)  For the reasons set forth

25    below, the Court GRANTS in part and DENIES in part Defendants' motions.

26

27    _____
      [1]      When the Court discusses County Defendants and City Defendants together, it will refer
28    to them collectively as "Defendants."

                                                    1

## I.   FACTUAL AND PROCEDURAL BACKGROUND

On April 2, 2012, an individual named Korey Kauffman ("Kauffman") was reported missing.  (ECF No. 169 at 13.)  On April 4, 2012, Bunch, a criminal investigator for the County DA's Office, filed a report that included statements from an informant named Michael Cooley ("Cooley"), who was the last person to see Kauffman alive.  (*Id.*)  Cooley implicated prominent criminal defense attorney Frank Carson ("Carson") — and by extension, Plaintiffs — in Kauffman's murder.  (*Id.* at 13–14.)  Plaintiffs' claims are based on allegedly wrongful actions by Defendants in subsequently investigating, arresting, and prosecuting Plaintiffs.  (*Id.* at 1–8.)  A jury ultimately found Plaintiffs not guilty on all charges.  (*Id.* at 45.)

Plaintiffs filed the instant action on February 26, 2015.  (ECF No. 1.)  Plaintiffs filed the operative Second Amended Complaint ("SAC") on November 18, 2021, alleging various 42 U.S.C. § 1983 claims and state law claims.  (*Id.* at 64–87.)  On January 10, 2022, Defendants filed the instant motions to dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (ECF Nos. 172, 174.)

## II.   STANDARD OF LAW

A motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) tests the legal sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Rule 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).  Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotations omitted).  "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims."  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court must give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *Retail*

1   *Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege

2   "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to

3   relief." *Twombly*, 550 U.S. at 570 (internal citation omitted).

4           Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of

5   factual allegations." *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

6   While Rule 8(a) does not require detailed factual allegations, "it demands more than an

7   unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  A

8   pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

9   elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678

10  ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

11  statements, do not suffice.").  Thus, '[c]onclusory allegations of law and unwarranted inferences

12  are insufficient to defeat a motion to dismiss for failure to state a claim." *Adams v. Johnson*, 355,

13  F.3d 1179, 1183 (9th Cir. 2004) (citations omitted).  Moreover, it is inappropriate to assume the

14  plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws

15  in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State*

16  *Council of Carpenters*, 459 U.S. 519, 526 (1983).

17          Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough

18  facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim

19  has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

20  reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

21  680.  While the plausibility requirement is not akin to a probability requirement, it demands more

22  than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.  This plausibility

23  inquiry is "a context-specific task that requires the reviewing court to draw on its judicial

24  experience and common sense." *Id.* at 679.  Thus, only where a plaintiff fails to "nudge [his or

25  her] claims . . . across the line from conceivable to plausible" is the complaint properly dismissed.

26  *Id.* at 680 (internal quotations omitted).

27          If a complaint fails to state a plausible claim, "'[a] district court should grant leave to

28  amend even if no request to amend the pleading was made, unless it determines that the pleading

3

1   could not possibly be cured by the allegation of other facts.'"  *Lopez v. Smith*, 203 F.3d 1122,

2   1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995));

3   *see also Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in

4   denying leave to amend when amendment would be futile).  Although a district court should

5   freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to

6   deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint."

7   *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013).

8       **III.   ANALYSIS**

9       County Defendants move to dismiss for the following reasons: (1) the SAC constitutes an

10  impermissible shotgun pleading; (2) claims based on Plaintiffs' 2012 and 2015 arrests are time-

11  barred; (3) claims against Fladager are time-barred; (4) official capacity claims against the

12  County DA's Office are redundant to claims against the County; (5) claims against Fladager

13  based on her role as a prosecutor should be dismissed without leave to amend; (6) Plaintiffs fail to

14  state Fourth Amendment claims for unlawful search and seizure based on judicial deception; (7)

15  Plaintiffs fail to state claims for malicious prosecution; (8) Plaintiffs fail to state *Monell* claims

16  against the County; and (9) Plaintiffs fail to state deliberate fabrication claims.[2]  (ECF No. 172-1.)

17      City Defendants move to dismiss for the following reasons: (1) the SAC is a shotgun

18  pleading; (2) individuals sued in their official capacity should be dismissed; (3) Plaintiffs' *Monell*

19  claims fail; (4) Plaintiffs fail to state Fourth Amendment claims; (5) Plaintiffs fail to state

20  malicious prosecution claims; (6) Plaintiffs fail to state deliberate fabrication claims; (7) Evers is

21  entitled to qualified immunity; (8) Plaintiffs fail to state common law false arrest/imprisonment

22  claims; (9) Plaintiffs fail to state common law negligence claims; and (10) Plaintiffs fail to state

23  negligent infliction of emotional distress claims.[3]  (ECF No. 174.)

24  _____

25  [2]       Plaintiffs state they dismissed the County DA's Office from the action, dismissed claims
    against Fladager and Bunch in their official capacities, and struck their reference to the
26  Fourteenth Amendment under the malicious prosecution claims.  (ECF No. 194 at 10 (citing ECF
    No. 190).)  Plaintiffs oppose County Defendants' motion on all remaining grounds.  (*See id.*)

27  [3]       Plaintiffs assert they dismissed the official capacity claims against Carroll and struck a
28  reference to the Fourteenth Amendment in the malicious prosecution claims.  (ECF No. 195 at 8

1   The Court will address the parties' arguments in turn.  To the extent Defendants'

2   arguments overlap, the Court addresses those arguments from both motions together.

3                      A.    <u>Shotgun Pleading</u>

4   Defendants argue the Court should dismiss the SAC as an impermissible shotgun

5   pleading, as it did in its previous Order.  (ECF No. 172-1 at 11; ECF No. 174 at 16.)

6   Rule 8 requires "each averment of a pleading to be simple, concise, and direct."  *McHenry*

7   *v. Renne*, 84 F.3d 1172, 1177–78 (9th Cir. 1996) (internal quotation marks omitted).  To comply

8   with Rule 8, a complaint should clearly and fully set forth "who is being sued, for what relief, and

9   on what theory, with enough detail to guide discovery."  *Id.* at 1178.  Shotgun pleading occurs

10  when: (1) one party pleads that multiple parties did an act, without identifying which party did

11  what specifically; or (2) when one party pleads multiple claims and does not identify which

12  specific facts are allocated to which claim.  *Hughey v. Camacho*, No. 2:13-cv-02665-TLN-AC,

13  2014 WL 5473184, at *4 (E.D. Cal. Oct. 23, 2014).

14  In its previous Order, the Court dismissed the First Amended Complaint ("FAC") as a

15  shotgun pleading because Plaintiffs addressed Defendants collectively in nearly all the allegations

16  and claims.  (ECF No. 86.)  In contrast, the much-improved SAC adds considerable factual detail

17  (ECF No. 169 at 13–48), delineates the "wrongful acts" of each Defendant (*id.* at 48–64), and

18  specifies what facts give rise to each claim (*id.* at 64–87).  Although the SAC could be clearer at

19  times, it is no longer a shotgun pleading.  The Court thus DENIES Defendants' motions to

20  dismiss pursuant to Rule 8.

21                      B.    <u>Claims Based on Plaintiffs' 2012 and 2015 Arrests</u>

22  County Defendants argue that claims based on Plaintiffs' 2012 and 2015 arrests are barred

23  by California's two-year statute of limitations for personal injury actions.  (ECF No. 172-1 at 12.)

24  In opposition, Plaintiffs argue claims based on their 2015 arrests are timely because the statute of

25  limitations period for those claims was tolled pursuant to California Government Code § 945.3

26

27  _____

28  (citing ECF No. 192).)  Plaintiffs oppose City Defendants' motion to dismiss on all remaining
    grounds.  (*See id.*)

5

("§ 945.3") until Plaintiffs' criminal proceedings ended in 2019.[4]  (ECF No. 194 at 13.)  Plaintiffs

argue the allegations in the SAC are not time-barred because they relate back to the timely

allegations in the FAC.  (*Id.* at 13–14.)  Plaintiffs do not address County Defendants' arguments

as to claims based on the 2012 arrest, other than to state in a later footnote that the 2012 arrest is

not brought "as an independent basis for a claim for violation of the Fourth Amendment."  (*Id.* at

19 n.5.)  Because Plaintiffs do not offer any opposition as to the 2012 arrest, the Court will only

address claims based on the 2015 arrests.

"An otherwise time-barred claim in an amended pleading is deemed timely if it relates

back to the date of a timely original pleading."  *Asarco, LLC v. Union Pac. R.R. Co.*, 765 F.3d

999, 1004 (9th Cir. 2014).  Under Rule 15(c), an amended complaint relates back when it asserts

a claim "that arose out of the conduct, transaction, or occurrence set out — or attempted to be set

out — in the original pleading."  Fed. R. Civ. P. 15(c)(1)(B).

In the SAC, Plaintiffs allege they were arrested multiple times, with the "final unlawful

arrest" taking place on August 14, 2015.  (ECF No. 169 at 68.)  Plaintiffs filed the original

Complaint in this case on February 26, 2015, prior to their final arrests.  (ECF No. 1.)  It is

undisputed that Plaintiffs' claims were tolled under § 945.3 until the criminal proceedings ended

in 2019.  Plaintiffs filed the FAC on July 28, 2020 — within two years of the date criminal

charges were no longer pending.  (ECF No. 86.)  Plaintiffs argue the FAC specifically includes

the following allegations about the 2015 arrests: that "Bobby and Daljit were arrested for the

murder of Korey Kauffman and imprisoned pending their preliminary hearing" (ECF No. 86 at ¶

66); that an unqualified cell phone expert was used to support the 2015 "warrant for the arrest of

Bobby and Daljit" (*id.* at ¶ 69); and that, due to the 2015 arrests, "Bobby and Daljit were held for

---

[4]        County Defendants do not dispute that § 945.3 tolled these claims.  Federal courts apply
the forum state's laws with respect to tolling of the statute of limitations insofar as state law is not
inconsistent with federal law.  *Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191, 1198
(9th Cir. 2014).  California law statutorily tolls "[a]ny applicable statute of limitations for filing
and prosecuting" an action for "damages against a peace officer . . . based upon conduct of the
peace officer relating to the offense for which the accused is charged, including an act or
omission in investigating or reporting the offense or arresting or detaining the accused."  Cal.
Gov't Code § 945.3.

1  trial without probable cause" (*id.* ¶ 70).  (ECF No. 194 at 13.)  According to Plaintiffs, it is clear

2  these allegations referenced the 2015 arrests since those arrests resulted in Plaintiffs being held

3  for trial.  (*Id.* (citing ECF No. 86 at ¶¶ 66, 70).)  The Court agrees with Plaintiffs and concludes

4  the relation back doctrine applies because the claims involving the 2015 arrests stem from the

5  same conduct set out (or attempted to be set out) in the FAC.  Fed. R. Civ. P. 15(c)(1)(B).

6         Accordingly, the Court DENIES County Defendants' motion to dismiss on this basis.

7         C.      Claims Against Fladager as to the 2015 Arrest Warrant

8         County Defendants argue that claims against Fladager related to August 2015 arrest

9  warrants are time-barred based on a two-year statute of limitations for personal injury actions in

10  California.  (ECF No. 172-1 at 14.)  County Defendants further argue § 945.3 does not apply to

11  claims against Fladager, as it only applies to claims against "peace officers," which does not

12  include prosecutors.  (*Id.* at 15.)  In opposition, Plaintiffs contend the claims against Fladager

13  were timely raised in the FAC in 2020 because of a Court-imposed stay during the criminal

14  proceedings in 2015 that was not lifted until 2019.  (ECF No. 194 at 15.)  Plaintiffs do not address

15  Defendants' arguments as to § 945.3.  (*See id.*)

16         The Court agrees with Defendants that § 945.3 does not toll claims against Fladager.

17  Prosecutors are not considered "peace officers" under state law.  *See* Cal. Penal Code §§ 830,

18  830.1(a); 832.9(b)(3) (listing peace officers and distinguishing attorneys).  Plaintiffs seem to

19  concede that § 945.3 does not apply and instead argue — without citing any authority — that the

20  Court-imposed stay in this case tolled the statute of limitations for claims against Fladager.  (ECF

21  No. 194 at 15.)  Absent any authority to support such an argument, the Court concludes the

22  claims against Fladager related to the 2015 arrest warrants are time-barred because Plaintiffs did

23  not allege those claims until, at the earliest, 2020.

24         Thus, the Court GRANTS County Defendants' motion with leave to amend, as County

25  Defendants have not persuaded the Court that all of Plaintiffs' claims against Fladager based on

26  the 2015 arrest warrant are necessarily time-barred.  Should Plaintiffs amend, the Court directs

27  them to clearly allege — on a claim-by-claim basis — facts about when each claim accrued.

28  ///

1              D.       Claims Against Fladager as a Prosecutor

2          County Defendants argue claims against Fladager in her role as prosecutor should be

3   dismissed because she has Eleventh Amendment immunity and absolute immunity.  (ECF No.

4   172-1 at 17–18.)  In opposition, Plaintiffs argue that Fladager is not entitled to Eleventh

5   Amendment immunity based on allegations she failed to properly train investigators.  (ECF No.

6   194 at 16–17.)  Plaintiffs further argue Fladager is not entitled to absolute immunity for her

7   administrative and investigative misconduct.  (*Id.* at 17.)  The Court will address each type of

8   immunity in turn.

9          First, as to Eleventh Amendment immunity, the parties agree that state sovereign

10  immunity does not preclude claims against Fladager based on conduct that is administrative in

11  nature rather than prosecutorial.  *Compare Goldstein v. City of Long Beach*, 715 F.3d 750, 759–

12  60 (9th Cir. 2013)) ("[The] District Attorney represents the county when establishing

13  administrative policies and training related to the general operation of the district attorney's

14  office."), *with Weiner v. San Diego Cnty.*, 210 F.3d 1025, 1031 (9th Cir. 2000) ("[A] California

15  district attorney is a state officer when deciding whether to prosecute an individual.").

16         Plaintiffs argue their claims against Fladager do not stem from her role as a prosecutor,

17  but her role in setting local administrative policy and failing to properly train or discipline

18  investigators.  (ECF No. 194 at 17.)  In the SAC, Plaintiffs allege Fladager was responsible for

19  setting local administrative policies concerning the actions of her investigators.  (ECF No. 169 at

20  ¶¶ 34, 87, 97.)  Plaintiffs further allege Fladager was the final authority in the County, was

21  responsible for policies that allowed constitutional violations to occur, and was responsible for

22  training, supervising, and disciplining her investigators.  (*Id.*)  To the extent Plaintiffs claims do

23  not challenge Fladager's conduct as a prosecutor, Eleventh Amendment immunity does not

24  preclude such claims.

25         Second, as to absolute immunity, the parties agree Fladager is not entitled to absolute

26  immunity for claims related to administrative and investigatory conduct.  Absolute prosecutorial

27  immunity applies only to conduct "intimately associated with the judicial phase of the criminal

28  process." *Burns v. Reed*, 500 U.S. 478, 486 (1991) (quoting *Imbler v. Pachtman*, 424 U.S. 409,

8

430 (1976)).  In contrast, prosecutors "enjoy only qualified immunity, not absolute immunity, for investigatory, administrative, or investigative functions."  *Santana v. Cty. of Yuba*, No. 2:15-cv-00794-KJM-EFB, 2016 WL 1268107, at *14 (E.D. Cal. Mar. 31, 2016).

In the instant case, Plaintiffs assert their claims against Fladager are based on allegations about how she acted outside her role as a prosecutor.  (ECF No. 194 at 18.)  To the extent Plaintiffs' claims hinge on administrative and investigative misconduct and not prosecutorial conduct "intimately associated with the judicial phase of the criminal process," absolute immunity does not apply.  *Burns*, 500 U.S. at 48.

For these reasons, the Court DENIES Defendants' motion to dismiss based on Fladager's immunity.

E.     Unlawful Search and Seizure Based on Judicial Deception

County Defendants argue Plaintiffs fail to state judicial deception claims because: (1) Plaintiffs' allegations are conclusory and do not set forth specific facts as to each Defendants' role in the alleged misconduct; (2) Plaintiffs fail to allege Defendants acted intentionally or with reckless disregard for the truth; and (3) Plaintiffs fail to allege any misrepresentation or omission in the warrant affidavit was material to the finding of probable cause.  (ECF No. 172-1 at 20.)  City Defendants argue the claims fail because Plaintiffs do not allege Evers was an integral participant in Plaintiffs' arrests.  (ECF No. 174 at 21.)  In opposition, Plaintiffs argue the SAC alleges more than 22 deliberately false and misleading statements or omissions in the warrant affidavit and alleges no reasonable prosecutor would have brought charges based on this evidence.  (ECF No. 194 at 20.)  Plaintiffs also argue the SAC alleges in detail the misconduct of each individual and that they acted in concert.  (*Id.* at 21; ECF No. 195 at 16–17.)

"[G]overnment investigators may be liable for violating the Fourth Amendment when they submit false and material information in a warrant affidavit."  *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002).  Under this authority, "a § 1983 plaintiff must show that the investigator 'made deliberately false statements or recklessly disregarded the truth in the affidavit' and that the falsifications were 'material' to the finding of probable cause."  *Id.* (quoting *Hervey v. Estes*, 65 F.3d 784, 790 (9th Cir. 1995)).  It is true that "a plaintiff cannot hold an

9

1   officer liable because of his membership in a group without a showing of individual participation

2   in the unlawful conduct." *Jones v. Williams*, 297 F.3d 930, 935 (9th Cir. 2002) (citing *Chuman v.*

3   *Wright*, 76 F.3d 292, 294 (9th Cir. 1996)).  However, "district courts construing the group

4   liability doctrine of *Jones* and *Chuman* have upheld [§] 1983 claims against groups of defendants

5   where the pleadings also include factual allegations sufficient to establish that individual

6   defendants were integral participants in the unlawful conduct." *Martinez v. City of W.*

7   *Sacramento*, No. 2:16-cv-02566-TLN-EFB, 2019 WL 448282, at *16 (E.D. Cal. Feb. 5, 2019).

8           Although Plaintiffs' allegations could be clearer, the Court agrees with Plaintiffs that the

9   allegations support at the very least a reasonable inference that the individual Defendants "made

10   deliberately false statements or recklessly disregarded the truth in the affidavit and that the

11   falsifications were material to the finding of probable cause" as to Plaintiffs' 2015 arrests.

12   *Galbraith*, 307 F.3d at 1126.  Plaintiffs' unreasonable seizure claims detail multiple arrests that

13   "were each part of the plan to implicate Carson by arresting and pressuring others to falsely

14   implicate him." (ECF No. 169 at 104.)  Plaintiffs allege "[e]ach of these Defendants is

15   responsible for the multiple unlawful arrests and detention of [Plaintiffs] because they each

16   agreed to participate in the Task Force, and they each played a role in committing or authorizing

17   Plaintiffs' unlawful arrests." (*Id.*)

18           As to the 2015 arrests specifically, Plaintiffs allege a group including Fladager, Bunch,

19   Jacobson, and Evers jointly prepared Plaintiffs' arrest warrant based on "group consensus" as to

20   what charges to seek against Plaintiffs.  (*Id.* at ¶ 75.)  Plaintiffs go on to allege over 20 specific

21   false statements, misrepresentations, and/or omissions in the arrest warrant affidavit, such as the

22   omission of multiple other known suspects and use of information gained from a coercive

23   interrogation of Robert Woody ("Woody").  (*Id.* at ¶¶ 47–49, 76.)  Further, Plaintiffs allege facts

24   specific to each Defendant sufficient to infer that each were integral participants in the allegedly

25   unlawful arrest.  (*See, e.g.*, *id.* at ¶¶ 93–95, 97.)  Lastly, Plaintiffs allege "[i]f not for Defendants

26   making these material false statements, misrepresentations, and omissions . . ., Plaintiffs would

27   not have been arrested for murder with special circumstances and subsequently charged."  (*Id.* at

28   ¶¶ 77, 120.)  The Court concludes these allegations are sufficient to state a claim.

1    Thus, the Court DENIES Defendants' motion to dismiss the judicial deception claims.

2         F.    Malicious Prosecution

3    County Defendants argue Plaintiffs' allegations as to their malicious prosecution claims

4    are conclusory.  (ECF No. 172-1 at 21–22.)  City Defendants add that Evers played no role in the

5    prosecution.  (ECF No. 174 at 22.)  In opposition, Plaintiffs argue they adequately alleged their

6    malicious prosecution claims.  (ECF No. 194 at 21; ECF No. 195 at 17.)

7    To establish a cause of action for malicious prosecution, a plaintiff must demonstrate the

8    prior action was: (1) initiated by or at the direction of the defendant and legally terminated in the

9    plaintiff's favor; (2) brought without probable cause; and (3) initiated with malice.  *Siebel v.*

10   *Mittlesteadt*, 41 Cal. 4th 735, 740 (2007).  A plaintiff must also show the defendant prosecuted

11   him "for the purpose of denying [him] equal protection or another specific constitutional right."

12   *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004).

13   The only individual County Defendants listed under Plaintiffs' malicious prosecution

14   claims are Bunch and Jacobson.  (ECF No. 169 at 69.)  With respect to the first element, Plaintiffs

15   point to several allegations in the SAC regarding Bunch (*id.* at ¶ 93) and Jacobson's (*id.* at ¶ 94)

16   investigative conduct that initiated the criminal action.  Plaintiffs also cite allegations in the SAC

17   regarding Evers's role in the investigation that led to the criminal action.  (*Id.* at ¶ 95.)  The Court

18   already addressed these allegations in the context of the judicial deception claims.  Plaintiffs

19   further allege the criminal action terminated in their favor because they were found not guilty on

20   all charges after a jury trial.  (*Id.* at ¶ 84.)  With respect to the second and third elements,

21   Plaintiffs allege facts suggesting Defendants' actions were not supported by probable cause and

22   were motivated by a malicious desire to convict Carson.  (*Id.* at ¶¶ 93–95.)  Lastly, Plaintiffs

23   assert Defendants acted to deny Plaintiffs of their Fourth Amendment right to be free from

24   unlawful seizures.  (*Id.* at ¶ 126.)  The Court concludes these allegations provide at the very least

25   a reasonable inference that Defendants were integral participants in the group conduct and are

26   sufficient to state claim for malicious prosecution.  *Martinez*, 2019 WL 448282, at *16; *see Usher*

27   *v. City of L.A.*, 828 F.2d 556, 562 (9th Cir. 1987) (concluding the plaintiff adequately stated a

28   malicious prosecution claim based on allegations that "the defendants illegally arrested him,

11

1    contrived charges to justify the arrest, submitted false police reports, and initiated his criminal

2    prosecution in bad faith").

3         As such, the Court DENIES County Defendants' motion to dismiss Plaintiffs' malicious

4    prosecution claims.

5              G.     *Monell*

6         Defendants argue Plaintiffs fail to state *Monell* claims.  (ECF No. 172-1 at 23; ECF No.

7    174 at 19.)  In opposition, Plaintiffs contend the City and County are liable for the alleged

8    misconduct because: (1) they ratified the misconduct at issue; (2) they failed to properly train

9    officers; and (3) they had a practice of making unlawful arrests when officers had only a search

10   warrant and not an arrest warrant.  (ECF No. 194 at 26; ECF No. 195 at 13.)

11        It is well-established that municipalities cannot be held liable under § 1983 for

12   unconstitutional torts of their employees based solely on respondeat superior.  *Monell v. Dep't of*

13   *Soc. Servs. of City of N.Y.*, 436 U.S. 658, 693–94 (1978).  Pursuant to *Monell*, a municipality is

14   only liable under § 1983 when its own illegal acts are a "moving force" in the constitutional

15   violation.  *Id.*  A plaintiff may assert *Monell* liability on one of three grounds: (1) a longstanding

16   practice or custom, which constitutes the "standard operating procedure" of the local government

17   entity; (2) omissions or failures to act that amount to a local government policy of deliberate

18   indifference to constitutional rights; or (3) a local government official with final policy-making

19   authority ratifies a subordinate's unconstitutional conduct.  *Clouthier v. Cnty. of Contra Costa*,

20   591 F.3d 1232, 1249–50 (9th Cir. 2010), *overruled on other grounds by Castro v. Cnty. of L.A.*,

21   833 F.3d 1060, 1070 (9th Cir. 2016).

22        As to the County, Plaintiffs allege Fladager had supervisory and final policymaking

23   authority from the County such that her orders had the effect of setting a particular course of

24   action that caused the constitutional violations against Plaintiffs.  (ECF No. 169 at ¶ 34.)

25   Plaintiffs further allege Fladager played a significant role in the task force investigation, including

26   receiving updates and discussing next steps.  (*Id.*)  Plaintiffs allege Fladager approved of the

27   unlawful conduct during the investigation, including approving of or ratifying Plaintiffs' false

28   arrests, the decision to pursue Carson and to essentially ignore other more viable suspects, and the

1   decision to retain a cell tower expert who provided misleading evidence to pin the crime on

2   Carson, Plaintiffs, and others.  (*Id.*)  In addition, Plaintiff alleges Bunch was a municipal official

3   whose acts constitute official policy for the County and was responsible for the investigators and

4   police officers' actions during the investigation.  (*Id.* at ¶ 29.)  Alternatively, Plaintiffs allege

5   there was a pattern of arresting individuals without arrest warrants or probable cause and the

6   County failed to provide adequate training to avoid such constitutional violations in the future.

7   (*Id.* at ¶¶ 85–87, 128, 136.)  Lastly, Plaintiffs allege that facts regarding their multiple allegedly

8   wrongful arrests show a policy, practice, or custom of unlawful arrests.  (*Id.* at ¶¶ 58–72.)

9         As to the City, Plaintiffs allege Carroll is Chief of Police and "authorized and knew,

10   approved of, and/or ratified Evers's intensive involvement, only because the case involved Frank

11   Carson."  (*Id.* at ¶ 98.)  Plaintiffs further allege Carroll was briefed on the status of the Task Force

12   and he ratified and approved of the arrest warrant affidavit, despite the false and misleading

13   statements in that document, and ignored other, more plausible suspects.  (*Id.*)  Plaintiffs also

14   allege that Carroll knew of (and did not object to) the repeated unlawful arrests of Plaintiffs.  (*Id.*

15   at ¶ 35.)  Lastly, Plaintiffs allege there was a pattern of arresting individuals without arrest

16   warrants or probable cause as evidenced by their multiple unlawful arrests and City Defendants

17   failed to "provide adequate training" to prevent further constitutional violations.[5]  (*Id.* at ¶¶ 60–

18   71, 87, 136.)

19         Taking these allegations in the light most favorable to Plaintiffs and drawing all

20   reasonable inferences in their favor, the Court concludes Plaintiffs sufficiently allege the City and

21   County, through final decision and policymakers, knew of and approved the alleged constitutional

22   actions of the individual officers.  *See Anglero-Wyrick v. Cnty. of Sonoma*, No. 21-CV-01985-SK,

23   2021 WL 4170677, at *3 (N.D. Cal. Sept. 14, 2021) ("Whether these allegations support a *Monell*

24   claim for ratification or simply further support a claim that the County had a pre-existing policy

25   which caused the constitutional violations, Plaintiff has sufficiently alleged a *Monell* claim.").  It

26

27   ───────────────
     [5]      To the extent City Defendants argue Evers is not vicariously liable for the actions of
28   others, Plaintiffs clarify in their opposition that they are bringing claims against Evers solely
     based on his own misconduct and participation in an alleged conspiracy.  (ECF No. 195 at 15.)

1   is also plausible that the City and County had a policy or custom that was the moving force

2   behind constitutional violations based on Plaintiffs' allegations of their multiple wrongful arrests

3   and Defendants' failure to discipline the officers involved.  *See J.M. by & Through Rodriguez v.*

4   *Cnty. of Stanislaus*, No. 1:18-CV-01034-LJO-SAB, 2018 WL 5879725, at *5–6 (E.D. Cal. Nov.

5   7, 2018) (finding it plausible that the County had a policy or custom that was the moving force

6   behind excessive force violations where "[t]he incidents described in the complaint [were]

7   multiple, specific events in which significant force was utilized by Stanislaus County deputies in

8   situations where the force used may plausibly be said to have been excessive[,] . . . the incidents

9   occurred without any disciplining or retraining of the deputies involved[,] . . . [and] [t]he

10   incidents [were] described with sufficient detail to put Defendant on notice of the alleged policy

11   connecting them").

12          Accordingly, the Court DENIES Defendants' motions to dismiss the *Monell* claims.

13                      H.      Deliberate Fabrication

14          County Defendants argue Plaintiffs fail to state deliberate fabrication claims and

15   Defendants are entitled to absolute immunity.  (ECF No. 172-1 at 25–26.)  City Defendants argue

16   Plaintiffs' deliberate fabrication claims fail because they are conclusory.  (ECF No. 174 at 25.)  In

17   opposition, Plaintiffs argue they adequately alleged their deliberate fabrication claims and

18   Defendants are not entitled to immunity.  (ECF No. 194 at 28; ECF No. 195 at 20.)

19          A claim of deliberate fabrication of evidence "requires [Plaintiffs] to show that the

20   criminal proceedings against [them] — and consequent deprivations of [their] liberty — were

21   caused by [Defendants'] malfeasance in fabricating evidence."  *McDonough v. Smith*, 139 S. Ct.

22   2149, 2156 (2019).  The Ninth Circuit has held a plaintiff must allege either: "(1) Defendants

23   continued their investigation . . . despite the fact that they knew or should have known that [the

24   plaintiff] was innocent; or (2) Defendants used investigative techniques that were so coercive and

25   abusive that they knew or should have known that those techniques would yield false

26   information."  *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).

27          In the instant case, the SAC sufficiently alleges Defendants continued their investigation

28   even though they knew or should have known Plaintiffs were innocent.  (ECF No. 169 at ¶¶ 37,

132.)  For example, Plaintiffs allege Defendants "jointly drafted" the arrest warrant affidavit that "purposefully omitted exculpatory evidence regarding other suspects" and Bunch "destroyed notes" from a conversation with the last person to see Kauffman alive and omitted this fact from the arrest warrant.  (*Id.* at ¶¶ 41, 45, 49, 73, 93(c).)  Moreover, Plaintiffs also sufficiently allege Defendants used investigative techniques with Woody that were so coercive and abusive they knew, or should have known, that those techniques would yield false information.  (*Id.* at ¶ 133.)  The SAC includes several pages of allegations about specific coercive and abusive techniques County Defendants used to secure false testimony, such as lengthy interrogations and threats.  (*Id.* at ¶¶ 54–56.)  Plaintiffs specifically allege the presentation of misleading evidence in the arrest warrant affidavit caused Plaintiffs to be criminally charged.  (*Id.* at ¶¶ 13, 47, 50, 53–55, 73, 76, 77, 132, 136.)  As with the other claims already discussed, the Court finds there are sufficient factual allegations to infer that the named individual Defendants were integral participants in the group conduct.  *Martinez*, 2019 WL 448282, at *16.  This is sufficient to state claims for deliberate fabrication.

With respect to Defendants' immunity argument, Defendants do not persuade the Court that they are entitled to absolute immunity based on these allegations because police officer witnesses are not entitled to absolute immunity for perjured testimony that brings about a wrongful prosecution, nor are they entitled to immunity for non-testimonial acts such as fabricating evidence.  *Paine v. City of Lompoc*, 265 F.3d 975, 981 n.2, 982 (9th Cir. 2001).

For these reasons, the Court DENIES Defendants' motion as to the deliberate fabrication claims.

## I.  Qualified Immunity

City Defendants argue Evers is entitled to qualified immunity because he did not violate clearly established law.  (ECF No. 174 at 27.)  City Defendants acknowledge, however, that this argument may be better considered on a motion for summary judgment.  (*Id.* at 26 n.9.)  In opposition, Plaintiffs argue their allegations defeat qualified immunity.  (ECF No. 195 at 22.)

In § 1983 actions, qualified immunity "protects government officials from civil liability where 'their conduct does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known.'" *Cunningham v. Kramer*, 178 F. Supp. 3d 999, 1003 (E.D. Cal. 2016) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).  The doctrine "gives government officials breathing room to make reasonable but mistaken judgments" and "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

In the instant case, the Court cannot conclude that qualified immunity is appropriate at this stage.  Dismissal under Rule 12(b)(6) "is not appropriate unless [the court] can determine, based on the complaint itself, that qualified immunity applies." *Id.*; *see also Jensen v. City of Oxnard*, 145 F.3d 1078, 1085 (9th Cir. 1998).  Plaintiffs' claims involve a complex array of factual allegations that, if true, may preclude City Defendants from qualified immunity.  The Court concludes a determination of whether qualified immunity applies in this case should be made after further development of the factual record, such as on a motion for summary judgment.  Thus, the Court DENIES City Defendants' motion to dismiss on the aforementioned basis.

J.      False Arrest/Imprisonment

City Defendants argue Plaintiffs' common law false arrest claims against Evers fail because Evers did not personally arrest Plaintiffs or otherwise cause Plaintiff to be arrested and Evers is immune from liability because a prosecutor charged Plaintiffs with a crime.  (ECF No. 174 at 27.)  In opposition, Plaintiffs argue they adequately alleged their false arrest claims and Evers is not immune from liability.  (ECF No. 195 at 23.)

A false imprisonment claim in an arrest context arises upon "(1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief." *Easton v. Sutter Coast Hosp.*, 80 Cal. App. 4th 485, 496 (2000).  An officer acts "without lawful privilege" either when he arrests without probable cause, or when he maliciously arrests another by personally serving an arrest warrant issued solely on deliberately falsified information. *Blaxland v. Commonwealth Dir. of Pub. Prosecutions*, 323 F.3d 1198, 1205 n.4 (9th Cir. 2003).

As mentioned, Plaintiffs allege Evers was part of the group that chose what charges to seek in the arrest warrant affidavit.  (ECF No. 169 at ¶ 75.)  Plaintiffs further allege Evers spoke

16

with Brown about the arrest warrant, knew it contained false and misleading statements and omissions, and did nothing to correct it.  (*Id.* at ¶ 95.)  In addition, Plaintiffs allege Evers used various abusive and improper interviewing techniques to coerce a false confession from Woody and failed to disclose material information from the interview on the arrest warrant affidavit.  (*Id.* at ¶¶ 55, 95.)  These allegations are sufficient to provide at the very least a reasonable inference that Evers was an integral participant in arresting Plaintiffs without probable cause and/or based on an arrest warrant issued based on deliberately falsified information.  *See Blaxland*, 323 F.3d at 1205 n.4; *see also Harden v. S.F. Bay Area Rapid Transit Dist.*, 215 Cal. App. 3d 7, 15–16 (1989) ("All who take part in or assist in the commission of a false imprisonment are joint tortfeasors and may be joined as defendants without an allegation or proof of a conspiracy.").  As to City Defendants' immunity argument, the allegations already discussed at length support a reasonable inference that Evers acted with malice, which would preclude immunity.  *See id.* at 15 ("Where the arrest is made with malice . . . no immunity attaches, whether or not the arrest was made pursuant to warrant or legal process.").

Therefore, the Court DENIES City Defendants' motion to dismiss the false arrest/false imprisonment claims.

### K.     Negligence

City Defendants argue Plaintiffs' negligence claims fail because they are conclusory. (ECF No. 174 at 28.)  In opposition, Plaintiffs argue they adequately alleged their negligence claims.  (ECF No. 195 at 25.)

In California, the elements of a negligence claim are "a duty of care, breach of that duty, and the breach is the proximate cause of the resulting injury."  *Campos v. City of Merced*, 709 F. Supp. 2d 944, 966 (E.D. Cal. 2010).

As to the first element, "officers have a duty to perform their official duties in a reasonable manner."  *Sanchez v. Cnty. of Sacramento*, No. 2:19-CV-01545-MCE-AC, 2021 WL 4066262, at *7 (E.D. Cal. Sept. 7, 2021).  Indeed, "[n]egligence liability may be imposed if . . . an officer undertakes affirmative acts that increase the risk of harm to the plaintiff."  *Id.*  As to the second element, Plaintiffs again cite allegations about the role Evers played in preparing a false

1   arrest warrant and omitting exculpatory evidence to manufacture probable cause.  (ECF No. 195

2   at 26 (citing ECF No. 169 at ¶¶ 8, 13, 37, 73, 76, 77, 95, 98).)  The Court has already discussed

3   those allegations at length in the context of the previous claims.  Plaintiffs' allegations provide at

4   the very least a reasonable inference that Evers breached his duty to perform his duties in a

5   reasonable manner.  *Sanchez*, 2021 WL 4066262, at *7.  As to the final elements of causation and

6   injury, Plaintiffs adequately allege that Evers's conduct led to Plaintiffs' wrongful arrests and

7   prosecutions.  This is sufficient to state claims for negligence.

8       Thus, the Court DENIES City Defendants' motion to dismiss Plaintiffs' negligence

9   claims.

10          L.      <u>Negligent Infliction of Emotional Distress ("NIED")</u>

11      City Defendants argue Plaintiffs' NIED claims should be dismissed because they are not

12  separate from their negligence claims.  (ECF No. 174 at 29.)  In opposition, Plaintiffs argue they

13  adequately alleged their NIED claims.  (ECF No. 195 at 28.)

14      The Court agrees with City Defendants.  Under California law, "[t]here is no independent

15  tort of negligent infliction of emotional distress . . . [r]ather, the tort is negligence."  *Campos*, 709

16  F. Supp. 2d at 966 (citing *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 984 (1993)).  As

17  Plaintiffs already pleaded negligence claims based on the same allegations, Plaintiffs' NIED

18  claims are duplicative.  *See Gualillo v. S.F. Police Dep't*, No. 16-cv-05584-JSC, 2017 WL

19  6059275, at *4 (N.D. Cal. Dec. 7, 2017) (dismissing the plaintiff's NIED claim on a motion for

20  summary judgment because it was duplicative of his negligence claim and plaintiff could recover

21  emotional distress damages on his negligence and § 1983 claims).

22      Accordingly, the Court GRANTS City Defendants' motion to dismiss Plaintiffs' NIED

23  claims as duplicative of their negligence claims.  Because amendment would be futile due to the

24  existence of Plaintiffs' duplicative negligence claims and Plaintiffs do not assert any other basis

25  for NIED claims, the Court denies leave to amend.

26  ///

27  ///

28  ///

**IV.    CONCLUSION**

For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendants' Motions to Dismiss (ECF Nos. 172, 174) as follows:

1.  County Defendants' motion (ECF No. 172) is GRANTED with leave to amend as to the time-barred claims against Fladager related to the 2015 arrest warrants and is DENIED in all other respects; and

2.  City Defendants' motion (ECF No. 174) is GRANTED without leave to amend as to Plaintiffs' negligent infliction of emotional distress claims and is DENIED in all other respects.

Plaintiffs may file an amended complaint — *only* to cure the statute of limitations issue as to the claims against Fladager related to the 2015 arrest warrants — not later than thirty (30) days from the electronic filing date of this Order.  If Plaintiffs opt not to file an amended complaint, this action will proceed on the remaining claims in the SAC.  Defendants shall file responsive pleadings not later than twenty-one (21) days from the electronic filing date of the amended complaint, or, if Plaintiffs opt to proceed on the SAC, not later than twenty-one (21) days from Plaintiffs' deadline for filing an amended complaint.

IT IS SO ORDERED.

**DATED:  September 13, 2022**

Troy L. Nunley
United States District Judge