**P O R T E R  |  S C O T T**
A PROFESSIONAL CORPORATION
John R. Whitefleet, SBN 213301
jwhitefleet@porterscott.com
Carl L. Fessenden, SBN 161494
cfessenden@porterscott.com
Colin J. Nystrom, SBN 354503
Cnystrom@porterscott.com
2180 Harvard Street, Suite 500
Sacramento, California 95815
TEL: 916.929.1481
FAX: 916.927.3706

Attorneys for Defendants
COUNTY OF STANISLAUS,
BIRGIT FLADAGER, KIRK BUNCH,
STEVE JACOBSON, and MARLISSA FERREIRA

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BALJIT ATHWAL; DALJIT ATWAL,<br><br>            Plaintiffs,<br><br>v.<br><br>COUNTY OF STANISLAUS, CITY OF MODESTO, KIRK BUNCH; JON EVERS; DALE LINGERFELT; STEVE JACOBSON; BIRGIT FLADAGER; GALEN CARROLL,<br><br>            Defendants.<br>_____/<br><br>AND RELATED CASES<br><br><br>_____/ | CASE NO.  1:15-cv-00311-DJC-BAM<br>Consolidated with:<br>1:18-cv-00496-DJC-BAM (DeFillipo)<br>1:18-cv-01403-DJC-BAM (Quintanar)<br>1:20-cv-00770-DJC-BAM (Wells/McFarlane)<br>1:20-cv-00747-DJC-BAM (Carson)<br><br>**DEFENDANTS' MOTION IN LIMINE**<br><br>Action Filed:    February 26, 2015<br>Trial Date:      April 14, 2025 |

Defendants submit the following motions in limine.

## I.    INTRODUCTION

This case is a consolidated matter arising from the investigation and/or prosecution of the murder of Korey Kauffman. Mr. Kauffman disappeared in April 2012 and his remains were found

1

in August 2013.

## II. STANDARD

The Court has broad discretion to determine the admissibility of evidence. *United States v. McLean*, 138 F.3d 1398, 1403 (11th Cir. 1998). "The real purpose of a motion in limine is to give the trial judge notice of the movant's position so as to avoid the introduction of damaging evidence which may irretrievably affect fairness of the trial. A court has the power to exclude evidence in limine only when evidence is clearly inadmissible on all potential grounds." *Stewart v. Hooters of Am., Inc.*, No. 8:04-CV-40-T-17-MAP, 2007 WL 1752843, *1 (M.D. Fla. 2007) (citing *Luce v. United States*, 469 U.S. 38, 41 (1984))

**DEFENDANTS' MOTION IN LIMINE**

# MOTION IN LIMINE – No. 1

**Prevent introduction of any testimony or documents from Plaintiffs' retained expert—Matt Murphy—on a District Attorney's custom and practice.**

Plaintiff's retained expert Matt Murphy is an expert in the prosecution of crimes. (See Exhibit A of John R. Whitefleet). He is a former prosecutor offering opinions on the alleged inappropriateness of conduct by Defendants Fladager, Harris, and Ferreira—prosecutors in the Stanislaus County District Attorney's Office—during the investigation of Korey Kauffman's murder. Mr. Murphy's opinions should be excluded or substantially limited under Federal Rules of Evidence 401, 403, and 702.

Expert testimony is admissible only if it meets the standards of Rule 702. The Supreme Court in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), established the trial court's gatekeeping obligation to ensure that expert testimony is both **relevant and reliable**. The Court extended this obligation to all expert testimony—scientific, technical, or otherwise—in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

Here, Plaintiffs fail to meet their burden of establishing that Murphy's testimony satisfies Rule 702. While Mr. Murphy has experience as a prosecutor, his opinions are not grounded in scientific methods or reliable principles, and instead amount to subjective beliefs and speculation. See *Daubert*, 509 U.S. at 590 ("more than subjective belief or unsupported speculation").

Moreover, Murphy's opinions do not involve specialized knowledge outside the jury's understanding. The trier of fact is fully capable of evaluating whether the prosecutors' actions were reasonable based on the facts presented. His report offers no technical insight, just commentary on how he believes the case should have been handled.

Additionally, the scope of Murphy's report and anticipated testimony go far beyond the issues of this case. Only conduct that is investigatory or administrative—not advocacy—is actionable. See *Van de Kamp v. Goldstein*, 555 U.S. 335, 343 (2009); *Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976). Plaintiffs' claims against the prosecutorial defendants have been litigated extensively and refined to only include conduct up to the time prosecutors brought charges against the plaintiffs. Murphy's report does not distinguish between these categories of conduct, and instead

**DEFENDANTS' MOTION IN LIMINE**

takes a broad-brush approach that improperly criticizes discretionary decisions protected by absolute or other statutory immunities. Review of Murphy's report and deposition testimony sets forth amply grounds to exclude his testimony at trial because it focuses on his opinion of the prosecutors' conduct as advocates in the criminal justice system. Murphy repeatedly makes comments such as "no criminal prosecution should have been based" on Robert Woody's witness statements, multiple statements questioning whether it was proper for the DA to file charges against the plaintiffs, and opinions regarding Brady violations after the charges were filed. Each of these opinions is entirely irrelevant, as it has been conclusively established that this type of conduct is immune from civil suit and is irrelevant to the trier of fact.

Additionally, Mr. Murphy's report is replete with impermissible legal conclusions—e.g., whether conduct was "inappropriate," "malicious," or "unethical." Such conclusions invade the province of the jury and are inadmissible. See *Gonzalez v. City of Garden Grove*, No. CV 05-1506 CAS (JTLx), 2006 WL 5112757, at * (C.D. Cal. Dec. 4, 2006) (excluding expert testimony offering legal conclusions). Allowing Murphy to testify on how he "would have handled the case" serves only to confuse the jury and invite speculation on legally irrelevant matters. His testimony risks unfair prejudice, jury confusion, and waste of time under Rule 403.

Because Matt Murphy's opinions are unreliable, unhelpful, legally impermissible, and prejudicial, his testimony should be excluded in full or strictly limited to exclude: (1) any legal conclusions (e.g., whether Defendants acted unlawfully or improperly), (2) any opinions on conduct protected by prosecutorial immunity, (3) any speculative commentary about how he would have acted differently in the role of prosecutor.

**DEFENDANTS' MOTION IN LIMINE**

## <u>MOTION IN LIMINE – No. 2</u>

**Preclude or Limit Introduction of Testimony or Documents from Plaintiffs' Retained Expert Scott Defoe on Police Practices.**

Plaintiffs have designated Scott DeFoe, a retired police officer, as a police practices expert. (See Exhibit B to the Declaration of John R. Whitefleet.) In his report, Mr. DeFoe offers opinions about what a reasonable peace officer would have known under the circumstances and how officers should have acted based on law enforcement training and experience. However, much of Mr. DeFoe's anticipated testimony falls outside the scope of his expertise, lacks foundation, and improperly offers legal conclusions. As such, it should be excluded under Federal Rules of Evidence 401, 403, 602, and 702.

*a.*      *Mr. DeFoe Is Not Qualified to Opine on Prosecutorial Conduct*

As a threshold matter, Mr. DeFoe is not a former prosecutor, attorney, magistrate, judge, or criminal law scholar. He lacks the qualifications to opine on matters involving prosecutorial discretion, legal strategy, charging decisions, or any conduct falling within the role of the District Attorney defendants. He also Courts routinely preclude expert testimony on prosecutorial conduct from individuals without relevant qualifications. See *United States v. Finley*, 301 F.3d 1000, 1013 (9th Cir. 2002) (upholding exclusion of expert who lacked experience in the relevant field). Accordingly, Mr. DeFoe's opinions must be strictly limited to his area of expertise: the conduct of law enforcement investigators—not prosecutors.

*b.*      *Mr. DeFoe's Opinions on Investigative Bias and Intent Lack Foundation and Are Speculative*

As to the substance of Mr. DeFoe's report and expected testimony, such is also subject to exclusion under the Federal Rules of Evidence. Mr. DeFoe's first offered opinion is that "Defendants failed to conduct a proper, unbiased and thorough investigation into the disappearance and murder of Mr. Korey Kauffman on March 29, 2012." In this portion of his report, he lists several other possible suspects. He ends each description of the suspect with the statement "[suspect] was not seriously pursued as a suspect because he had no connection to [Frank] Carson." This statement lacks foundation—in that the DeFoe has no personal knowledge that the reason a suspect was not

**DEFENDANTS' MOTION IN LIMINE**

pursued is because their lack of connection with Carson—and instead relies on "Because I Say So" reasoning. See *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997): "A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." Thus, this opinion fails under Rule 602, which requires a witness to have personal knowledge, and Rule 702, which requires an expert opinion to be based on sufficient facts or data and to assist the trier of fact. Assertions about investigator intent, absent specific evidence, are neither within DeFoe's expertise nor helpful to the jury.

> ### c. Mr. DeFoe's Opinions on Reasonable Suspicion and Probable Cause Are Unsupported Legal Conclusions

DeFoe's next opinion—that "Defendants did not have Reasonable Suspicion to detain the Plaintiffs for Mr. Kauffman's murder"—is also flawed. It provides no factual basis other than DeFoe's review of the case file, general POST guidelines, and his years in law enforcement. This type of unsupported, conclusory opinion offers no assistance to the jury and is not based on a reliable methodology. See *Daubert*, 509 U.S. at 590. The report makes no mention of

Moreover, reasonable suspicion is a fact-specific, legal determination that must be assessed on a case-by-case basis. Mr. DeFoe's blanket opinion—purporting to apply to eight separate plaintiffs on different occasions—grossly oversimplifies the constitutional analysis and risks misleading the jury. These conclusory assertions should be excluded under Rules 702 and 403.

DeFoe also opines that Defendants lacked probable cause to arrest the Plaintiffs. This too is misleading and legally incorrect. All Plaintiffs were <u>arrested pursuant to warrants</u>, which are presumptively valid under the Fourth Amendment. See *Baker v. McCollan*, 443 U.S. 137, 142–43 (1979). The relevant standard in this case is not whether probable cause existed in the abstract, but whether the affidavits submitted in support of the arrest warrants contained material falsehoods or omissions made intentionally or with reckless disregard for the truth—the standard established in *Franks v. Delaware*, 438 U.S. 154 (1978).

Mr. DeFoe's framing of the probable cause issue ignores the role of judicial review and falsely suggests that probable cause turns solely on his own assessment. His opinions risk confusing the jury by misstating the applicable legal standard and encroaching on the jury's role in assessing

**DEFENDANTS' MOTION IN LIMINE**

credibility and intent.

     *d.     Mr. DeFoe Lacks Qualifications to Opine on the Legal Sufficiency of Warrant Affidavits*

While incorrectly couched in an opinion regarding the probable cause to arrest, many of DeFoe's statements in his report are aimed at what he considers to be material falsehoods or omissions made intentionally or with reckless disregard for the truth, which form the factual basis for Plaintiffs' malicious prosecution and judicial deception claims. To support a § 1983 claim of judicial deception, a plaintiff must show that the defendant deliberately or recklessly made false statements or omissions that were material to the finding of probable cause. *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir.2002).

DeFoe goes to great lengths to discredit the information contained in the *Ramey* warrant, but a notable missing component of his report is what specific portions of the affidavit he alleges Detective Evers knew were false and/or what information that Detective Evers knew but was intentionally omitted, thus, the opinions are ultimately irrelevant to the issue at hand.

The court determines the materiality of alleged false statements or omissions. *Butler v. Elle*, 281 F.3d 1014, 1024 (9th Cir.2002). DeFoe's credentials to opine on the sufficiency of an affidavit to support a warrant are far more limited than his report suggests. While he may opine that he would—or would not—have included certain information in an affidavit in support of a warrant, DeFoe cannot state that such information was material to the issuance of the warrant. DeFoe has never served as a judge or legal analyst, nor does he have expertise in Fourth Amendment warrant jurisprudence. Further, statements like "affidavits establish probable cause" are legally incorrect and demonstrate a misunderstanding of the process. Probable cause, particularly in the context of an arrest pursuant to a warrant, is a legal standard determined by a neutral magistrate—not by an investigator or an affidavit. The affidavit simply conveys information to support that determination. At best, DeFoe's report simply misstates the law; at worst, it reflects a deeper misunderstanding of the relationship between probable cause, warrants, and the claims at issue in the present action. Regardless, his failure to appreciate these nuances warrants exclusion of the testimony, as its admission would unfairly prejudice the defendants and risk confusing the jury.

**DEFENDANTS' MOTION IN LIMINE**

*e.*      *Mr. DeFoe's Opinions on Monell Liability Are Unsupported and Improper*

Finally, DeFoe opines that institutional defendants failed to conduct proper internal investigations after it became clear that no Plaintiff would be convicted. He asserts that this failure "perpetuated inadequate training" and constituted "endorsement" of the conduct.

These opinions are not based on any identified department policy, written standard, or post-incident investigation records. Nor does DeFoe demonstrate that he has relevant expertise in municipal liability under § 1983 or *Monell*. His statements amount to conclusory commentary and should be excluded under Rules 702 and 403.

**DEFENDANTS' MOTION IN LIMINE**

**MOTION IN LIMINE – No. 3**

**Preclude or Limit Introduction of Testimony or Documents from Dr. Richard Leo, an Expert Witness in Police Interrogation Practices Who Testified in A Related Criminal Proceeding.**

Plaintiffs intend to offer expert testimony from Dr. Richard Leo regarding the interrogation of Robert Woody, who is not a plaintiff in this civil case. Dr. Leo authored a report dated December 11, 2017, in connection with the underlying criminal prosecution, *State of California v. Daljit Atwal*. (See Exhibit C to the Declaration of John R. Whitefleet.) He has provided no updated report, nor has he reviewed material specific to the claims or issues presently before the Court in this civil matter.

Dr. Leo's report focuses exclusively on the interrogation of Robert Woody and offers opinions that Woody was subjected to coercive tactics that produced unreliable and "scripted" statements. However, Woody is not a party, and the report contains no analysis or opinion that the defendant investigators or prosecutors knew that Woody's statements were false or fabricated them. As such, the report fails to establish a necessary link between the conduct at issue in Woody's interrogations and the constitutional violations alleged by Plaintiffs in this case. Accordingly, Dr. Leo's testimony is irrelevant under Federal Rule of Evidence 401 and substantially more prejudicial than probative under Rule 403—and should be excluded or limited as described below.

*a.    Opinion Lacks Sufficient Factual Foundation*

Dr. Leo's 2017 report was prepared for use in the criminal matter *State of California v. Daljit Atwal* and has not been updated or supplemented for this civil litigation. He has not reviewed the full discovery record, procedural posture, or evidence specific to the claims now before this Court, including malicious prosecution, deliberate fabrication, or false arrest. Because Dr. Leo did not apply his expertise to the facts or claims actually at issue in this case, his opinions will not assist the jury under Rule 702(a), and should be excluded or substantially limited.

*b.    Dr. Leo Mischaracterizes the Interview Record and Omits Material Context*

The material Dr. Leo primarily relies upon for is stale report generally falls into two distinct periods: (1) interviews conducted in early March 2014, and (2) interviews conducted in August

**DEFENDANTS' MOTION IN LIMINE**

2015. Notably:

- The August 2015 interviews occurred after arrest warrants had already issued and in the presence of Woody's criminal defense counsel. These later statements were consistent with earlier statements, and in many instances were more detailed and coherent, undermining the notion of "coerced confession."

- The examples Dr. Leo cites from the March 2014 interviews are presented selectively, without accounting for the full context of the conversations, including follow-up clarification, corroboration, and procedural posture.

Such cherry-picked excerpts offer little probative value and risk misleading the jury into believing that Woody's statements were the product of misconduct, even though the prosecution of the Plaintiffs involved independent facts and other sources of probable cause.

    *c.*     *Report Does Not Establish That Defendants Knew Woody's Statements Were False*

Even accepting Dr. Leo's opinions at face value—that Robert Woody was subject to coercive interrogation techniques—those opinions are only relevant if Plaintiffs can show that:

1. Woody's statements were materially relied upon by investigators or prosecutors in initiating or continuing the prosecution of Plaintiffs; and

2. Defendants knew, or should have known, that Woody's statements were false or unreliable.

Credibility determinations are within the province of the jury. A layperson is fully capable of evaluating whether Woody's statements were reliable or false, based on the totality of the evidence and Woody's demeanor. No expert testimony is needed to assist the jury in deciding whether a cooperating witness was telling the truth, particularly when that witness's statements were tested in court..

Dr. Leo's opinion that Woody's statements were fundamentally unreliable or coerced is also inconsistent with the factual stipulations made by Woody himself, represented by his own legal counsel.

On August 3, 2016, Robert Woody, represented by attorney Bruce Perry, entered into a formal testimony agreement with the State of California. In exchange for a reduced sentence, Woody

**DEFENDANTS' MOTION IN LIMINE**

stipulated to a detailed set of facts implicating Frank Carson, Daljit Atwal, Baljit Atwal, and others

in the events surrounding Korey Kauffman's death, as follows:

1. Robert Woody lives at 1130 East Avenue, Turlock, with Beverly Woody, Brian Woody, Robert Lee Jr., Brian Coats, Robert Branco, Mary Woody, Pebbles, and Diana.
2. Robert Woody worked at Pop N Cork for 9 years.
3. Robert Woody had a good relationship with Baljit/Daljit Atwal which included and turned into Baljit and Daljit Atwal berating/humiliating Robert Woody.
4. Daljit owns several guns, pulled guns/taser on Robert Woody.
5. Robert Woody was arrested in December 2011 for PC 496 with brother Brian.
6. Robert Woody was bailed out by Atwals.
7. Robert Woody was introduced to Frank Carson by Daljit Atwal after bailed out.
8. In exchange for no attorney fees for representation, Robert Woody was to perform a favor related to Frank Carson's property.
9. In March of 2012, prior to homicide, Robert Woody was with Baljit Atwal when he threatened Korey Kauffman to stay off the property.
10. On the evening of 3/30/12, Robert Woody was working at Pop N Cork and was asked by Daljit to check on Baljit at 838 Ninth Street
11. Daljit and Robert Woody traveled there in Daljit's blue BMW.
12. When they arrived, the gate was opened and unlocked.
13. He followed Daljit into the back of the property.
14. Baljit was already engaged in an altercation with victim, Korey Kauffman.
15. Daljit jumped in and assisted.
16. Robert Woody tried to intervene to get them to stop, saying Korey had enough and started to walk away and then he heard a gunshot.
17. When Robert Woody returns, he saw Daljit Atwal holding the gun and observed Korey Kauffman lifeless on the ground.
18. Robert Woody assisted Baljit in placing Korey's body in the truck and observed a gunshot wound in the middle of Korey's back. Robert Woody and Baljit Atwal transported Korey to the Pop N Cork. Robert Woody and Baljit Atwal dug a hole in the side yard of Pop and Cork. They placed Korey in the tarp before placing Korey in the ground in the side yard of Pop N Cork.
19. Robert Woody and Daljit went back into the store after burying the victim and stayed one hour to opening of the store.
20. After burying the body and leaving the store, Walter Wells arrived at PopnCork, engaged in conversation with Baljit and Daljit.
21. On the evening of 4/26/12 and early morning of 4/27 /12, Baljit Atwal and Robert Woody removed Korey from the ground at Pop N Cork and took his remains to the mountains in Baljit's silver Chevrolet Silverado pickup truck
22. After leaving Korey's remains in the mountains, Baljit Atwal directed Robert Woody to burn the truck.
23. They were followed out East Avenue by Daljit where Robert Woody parked the truck on the side of the road, dousing it with gasoline and lighting it on fire.
24. Later that morning, Baljit Atwal reported the vehicle stolen to Ceres PD.
25. On May 23, 2012, Robert Woody and Baljit Atwal proceed in Daljit's BMW to go to

**DEFENDANTS' MOTION IN LIMINE**

Michael Cooley's house and threaten Michael Cooley.

26. Baljit and Daljit Atwal gave Robert Woody money to go to Washington. Robert Woody stayed for a period of time.

27. Baljit and Daljit Atwal paid $7,000 for Robert Woody's dental work.

Many of the specific details Woody offered—locations, vehicles used, names of participants, actions taken before and after the death—corroborated earlier statements and were relied upon by the prosecution in pursuing charges. These facts were not simply the product of manipulation or scripting; they formed the foundation of a judicially recognized agreement, reviewed and accepted by the court.

Thus, even if Dr. Leo's opinion is accepted as relevant in a general academic sense, it fails to establish that Defendants acted with the required culpability for judicial deception or malicious prosecution. At most, Leo's opinion reflects a belief that the methods used created the potential for unreliability—not that the statements were actually false or known by Defendants to be false

    *d.*      *Admission of Dr. Leo's Testimony Risks a Mini-Trial on a Non-Party's Confession*

Allowing Dr. Leo to testify at length about Woody's interrogation invites the jury to litigate:

- Whether Woody was coerced;

- Whether his statements were reliable;

- And whether investigators acted improperly in questioning a non-party.

This risks a time-consuming detour into collateral issues, shifting the focus from the Defendants' conduct toward the Plaintiffs to a detailed inquiry into a non-party's psychological state and the propriety of long-past interrogation tactics. This creates substantial Rule 403 concerns: confusion of issues, undue delay, and unfair prejudice to Defendants.

Plaintiffs should be required to make a specific offer of proof demonstrating that Robert Woody's statements were materially relied upon by the Defendants in arresting, charging, or continuing to prosecute the individual Plaintiffs; and that Defendants knew or recklessly disregarded that those statements were false or unreliable. Absent that showing, Dr. Leo's opinions are irrelevant and inadmissible.

**DEFENDANTS' MOTION IN LIMINE**

## MOTION IN LIMINE – No. 4

### Preclude Introduction of a Declaration Signed by Frank Carson, deceased.

Plaintiffs seek to introduce a declaration purportedly written by Frank Carson in 2009 under penalty of perjury. (See Exhibit D to the Declaration of John R. Whitefleet.) As a preliminary matter, this evidence has not been properly authenticated and should be excluded under Federal Rule of Evidence 901. Mr. Carson was never deposed in this case, and Plaintiffs offer no admissible evidence to show that the document is what it purports to be. Without authentication, the declaration is inadmissible.

More importantly, the content of the document is inadmissible hearsay and constitutes impermissible character evidence under Rules 802 and 404(a). The declaration is replete with Mr. Carson's personal opinions and accusations directed at Defendant Kirk Bunch, including statements such as:

- "I found [Bunch] to be, in my dealings and observations, dishonest and a threatener of witnesses" (1:20–21)
- "I understand and believe Mr. Bunch's reputation to be that of a fabricator of the truth and an experienced intimidator of witnesses" (2:7–8)

These statements are classic hearsay—out-of-court statements offered for their truth—and do not fall under any hearsay exception. Moreover, the declaration references additional hearsay within hearsay, such as impressions of unnamed witnesses and commentary on unrelated prior cases, none of which are subject to cross-examination or proper foundation.

Additionally, the declaration is inadmissible under Rule 404(a)(1), which prohibits the use of character evidence to show that a person acted in conformity with a character trait on a particular occasion. Mr. Carson's opinions about Mr. Bunch's alleged dishonesty or witness intimidation are precisely the kind of improper character attacks Rule 404 was designed to exclude.

Further, introduction of this declaration would risk turning the trial into a mini-trial about unrelated, uncharged, and disputed conduct that allegedly occurred between Mr. Carson and Mr. Bunch well before the events giving rise to this lawsuit. The declaration has minimal probative value, if any, and would create a substantial risk of unfair prejudice, confusion of issues, and undue

### DEFENDANTS' MOTION IN LIMINE

delay, warranting exclusion under Rule 403.

Finally, the allegations referenced in Mr. Carson's declaration were the subject of investigation or litigation in which the respective Defendants were either cleared of wrongdoing or not found liable. Introducing this declaration now—without the ability to cross-examine Mr. Carson—would be fundamentally unfair and would serve only to mislead the jury and unfairly prejudice Defendants.

Accordingly, Defendants respectfully request that the Court exclude the 2009 Frank Carson declaration in its entirety. Plaintiffs should not be permitted to use its contents for any purpose at trial, including impeachment or character evidence.

## <u>MOTION IN LIMINE – No. 5</u>

### Preclude Introduction of Deposition Testimony of Beverly Woody, deceased.

Beverly Woody was deposed in this matter but is unavailable for trial. Her testimony is immaterial, riddled with contradictions and credibility issues, and poses a substantial risk of prejudice and confusion under Federal Rules of Evidence 401, 403, 602.

Ms. Woody is Robert Woody's mother. Robert Woody was a suspect in the murder of Korey Kauffman. Both Robert and Beverly were witnesses for the state during the preliminary hearing on the charges brought connected to Kauffman's murder.

Plaintiffs seek to put forth evidence that the investigators and prosecuting attorneys in the criminal proceeding coerced Ms. Woody into communicating a note with her son during the pendency of the preliminary hearing while he was in jail. The entire narrative is difficult to follow and ultimately both irrelevant and uncorroborated.

Ms. Woody's deposition is rife with inconsistencies and credibility issues. She repeatedly claims she "lied throughout the preliminary hearing," describing her sworn testimony at that time as "one big lie." (See Exhibit E to the Declaration of John R. Whitefleet, 31:13-14.) Yet she later confirms that much of what she testified to during that hearing was, in fact, true. (*Id*. 73:19-76:2.) Her description of key events—such as how a note was allegedly prepared by others, read to her, and shown to her son through a specific jail window—is speculative, lacks foundation (FRE 602), and is internally inconsistent. She admits she did not write the note, could not read it herself, and only knew its contents based on what others told her it said. (*Id*. 30:3; 48:12-21.) Ms. Woody explains that well before the note was written or shown to Woody, he told her that Kauffman was murdered by Athwal at Carson's property. (*Id*. 73:19-76:2.) That Woody helped move the body first to the Pop n Cork and later to the mountains. (*Id*. 74:15-75:16.) She knew Walter Wells name because he spent a significant amount of time at Pop n Cork. (*Id*. 42:13-15.) The testimony later provided by Ms. Woody contradicts her earlier statement that the content of the purported note was entirely false. Her ability to recall, understand, or independently verify any of the claims is highly questionable. These credibility issues could not be fully tested at deposition, and now—due to her passing—cannot be tested at trial, raising serious due process concerns.

### DEFENDANTS' MOTION IN LIMINE

1    Even if accepted at face value, Ms. Woody's testimony ultimately undercuts itself. She

2    claims the note was intended to pressure her son, Robert Woody, into falsely implicating Frank

3    Carson and Walter Wells. Later testimony shows that the note did not contain false statements.

4    Regardless, Ms. Woody unambiguously states that Woody refused to comply with the alleged

5    demand. (*Id*. 17:1-18-4; 40:14-17; 51:10-11.) Thus, the episode had no effect on the prosecution,

6    the charges, or Woody's ultimate testimony at the preliminary hearing.

7        For the reasons stated above, Defendants respectfully request that the Court exclude the

8    deposition testimony of Beverly Woody in its entirety, pursuant to Federal Rules of Evidence 401,

9    403, 602.

**DEFENDANTS' MOTION IN LIMINE**

<u>**MOTION IN LIMINE – No. 6**</u>

**Preclude introduction of employment records of Plaintiffs Wells and McFarlane.**

Defendants respectfully move to exclude evidence, testimony, or argument regarding Plaintiffs' employment records, including performance reviews, disciplinary histories, and other personnel file contents, under Federal Rules of Evidence 401, 403, and 404.

Plaintiffs have asserted constitutional and tort claims, including false arrest, malicious prosecution, and deliberate fabrication. The central questions in this case are whether Defendants unlawfully caused Plaintiffs to be arrested and prosecuted, not whether Plaintiffs were good or bad employees. Whether a Plaintiff performed well at work or received favorable evaluations has no bearing on the conduct during the investigation into the murder of Kauffman.

To the extent Plaintiffs claim reputational harm or employment consequences, they may testify to those general categories of damages, but the contents of their personnel files are not necessary to establish causation or impact, and are not probative of any liability issue.

Introducing employment records creates a substantial risk of side litigation over irrelevant issues such as job performance ratings, past complaints or commendations, workplace disputes, unrelated misconduct, or discipline. This opens the door to mini-trials on whether Plaintiffs were "good employees," which would confuse the jury, waste time, and distract from the constitutional issues central to this case.

Courts routinely exclude such collateral issues where they risk "confusing the issues" or creating unfair prejudice. See *United States v. Curtin*, 489 F.3d 935, 958 (9th Cir. 2007) (en banc) ("Rule 403 recognizes the trial court's fundamental duty to ensure trials are focused, efficient, and fair.")

To the extent Plaintiffs seek to use employment records to portray themselves as good people with strong reputations, this is inadmissible character evidence under Rule 404(a). Plaintiffs may not use prior employment performance to show that they were more or less likely to be truthful, law-abiding, or deserving of sympathy in the context of their arrests or prosecutions.

Employment records are neither probative of liability nor necessary to establish damages. Their admission would unfairly prejudice the Defendants by shifting focus from conduct of the

**DEFENDANTS' MOTION IN LIMINE**

parties at issue in this trial to Plaintiffs' character and unrelated employment histories. For these reasons, the Court should exclude all personnel records, performance reviews, and related employment materials at trial under Rules 401, 403, and 404.

## <u>MOTION IN LIMINE – No. 7</u>

**Exclude lay witness attendance at trial until the time of that person's testimony.**

All lay witnesses should be excluded from the courtroom until the time of that person's testimony. See FRE 615 ("At a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony."). Defendants request the court issue an order to this end.

**DEFENDANTS' MOTION IN LIMINE**

## <u>MOTION IN LIMINE – No. 8</u>

**Preclude characterization of the length of the preliminary hearing or trial.**

Any reference to the length of the preliminary hearing or the overall duration of the criminal case is irrelevant to the core claims in this civil matter—i.e., whether Defendants engaged in misconduct in initiating or continuing the prosecution of Plaintiffs, or whether any constitutional violations occurred. See FRE 401.

The legal validity of the underlying proceedings is not determined by how long they lasted, but by conduct of the defendants related to the Plaintiff's being charged in connection with the murder of Kauffman. Jurors should evaluate the claims based on the evidence—not the passage of time. Characterizing the case as unusually long or burdensome serves no legitimate probative purpose. Such statements only serve to invite the jury to sympathize with Plaintiffs based on emotional or subjective impressions of unfairness, imply misconduct by the prosecution or law enforcement, without evidence that the Defendants were responsible for the delay, and confuse the issues by suggesting that time alone equates to harm or constitutional violation.

In a case involving multiple defendants, a large record, and complex facts, the duration of proceedings can be attributed to many factors outside Defendants' control, including court scheduling, witness availability, and the scope of the prosecution. Allowing Plaintiffs to make hay of the length of the proceedings would unfairly prejudice the jury and distract from the elements they must actually decide.

The Court is empowered to "exercise reasonable control over the mode and order of examining witnesses and presenting evidence" to "avoid wasting time" and "protect witnesses from harassment or undue embarrassment." See FRE 611(a). A blanket prohibition on irrelevant references to the length of the criminal proceedings designed to solicit sympathy will promote an orderly and fair trial.

**DEFENDANTS' MOTION IN LIMINE**

# MOTION IN LIMINE – No. 9

## Preclude Characterization of Evidence as Exculpatory Except in Plaintiffs' Closing Statement.

Defendants respectfully move in limine for an order precluding Plaintiffs, their counsel, and their witnesses from referring to any evidence as "exculpatory" during the course of trial, including in witness examinations and opening statements. Defendants do not object to Plaintiffs characterizing evidence as exculpatory during their closing arguments, when the jury is instructed on the applicable legal standards. However, such labeling before the jury is instructed on the meaning of "exculpatory evidence" is improper and risks unfair prejudice and confusion.

Whether evidence is "exculpatory" is a legal characterization, not a factual observation. The term carries specific legal implications, especially in the context of *Brady v. Maryland*, 373 U.S. 83 (1963), and the prosecutorial duty to disclose favorable evidence. Use of the term may improperly suggest to the jury that the prosecution suppressed legally significant evidence, Defendants violated constitutional duties, or the jury should view the evidence as proof of innocence. These implications can mislead the jury and usurp its role in determining what weight to give the evidence. Witnesses and counsel should not be permitted to assign that label while the jury is still receiving evidence.

Further, describing evidence as "exculpatory" before legal instruction from the Court invites the jury to speculate on legal obligations and liability that are not yet before them. This risks unfair prejudice by framing the case in terms of alleged misconduct or constitutional violation based solely on how Plaintiffs describe their own evidence. It further risks confusing the jury about the proper standards to apply to the various claims brought by plaintiffs.

Courts routinely exclude legal conclusions or advocacy statements during witness examinations or evidence presentation, reserving such arguments for closing statements where the jury will have the full context of the evidence and legal standards. See FRE 403. This motion does not prevent Plaintiffs from raising their argument that exculpatory evidence existed during their closing argument. However, evidence should be described factually and neutrally throughout trial without risk of inflaming or confusing the jury. Defendants respectfully request that the Court issue an order precluding Plaintiffs, their counsel, and any witnesses from referring to any evidence as

**DEFENDANTS' MOTION IN LIMINE**

1  "exculpatory" during the trial proceedings, except during closing argument.

**DEFENDANTS' MOTION IN LIMINE**

<u>**MOTION IN LIMINE – No. 10**</u>

**Preclude evidence of damages after the filing of criminal charges**

In *Smiddy v. Varney*, 665 F.2d 261, 266 (9th Cir. 1981) ("*Smiddy*"), the Ninth Circuit held that the "filing of a criminal complaint immunizes investigating officers ... from damages suffered thereafter because it is presumed that the prosecutor filing the complaint exercised independent judgment in determining that probable cause for an accused's arrest exists at that time." Accordingly, if a prosecutor reaches an independent decision to press charges, that is considered an independent intervening act which cuts off a police officer's liability for a violation of § 1983. See *id*. Moreover, the court in *Smiddy* adopted a presumption that "the prosecutor filing the complaint exercised independent judgment in determining that probable cause for an accused's arrest exists at that time." *Id*. The presumption may be rebutted if the plaintiff shows that the independence of the prosecutor's judgment has been compromised. *Beck v. City of Upland*, 527 F.3d 853, 862 (9th Cir. 2008). Plaintiff has no evidence the prosecutor's judgment was compromised.

Evidence of damages occurring after criminal charges were filed is irrelevant, speculative, and beyond the scope of damages recoverable under the legal theories advanced in this case. See FRE 401, 403.

Permitting Plaintiffs to present broad evidence of post-charging harm would invite speculative and emotionally charged testimony untethered to Defendants' actions. It would also risk confusing the jury into awarding damages for harms potentially not caused by the investigating defendants but arose from the filing of criminal charges, including bail, jail time, attorneys fees expended, rather than for harms proximately caused by the conduct of the law enforcement Defendants. This creates a substantial risk of unfair prejudice under Rule 403, especially in a complex, multi-party case.

Defendants respectfully request that, before Plaintiffs are permitted to present any testimony or evidence of alleged damages occurring after the criminal charges were filed, Plaintiffs be required to make an offer of proof outside the presence of the jury overcoming the presumption discussed in *Smiddy*. In the absence of this foundational showing, testimony about damages occurring after formal charging would be speculative, irrelevant, and unduly prejudicial, and should be excluded

**DEFENDANTS' MOTION IN LIMINE**

under FRE 401 and 403.

DEFENDANTS' MOTION IN LIMINE

## MOTION IN LIMINE – No. 11

### Preclude Evidence or Argument Regarding Stanislaus District Attorney Conflicts

Based on Plaintiffs' extensive deposition questioning of Stanislaus County District Attorney Birgit Fladager regarding an alleged conflict of interest necessitating recusal, Defendants anticipate that this irrelevant and prejudicial topic will be raised at trial. The Court not allow that to happen.

None of Plaintiffs' claims in this civil case require proof that a conflict existed within the District Attorney's Office. Under Federal Rule of Evidence 401, evidence is relevant only if it makes a fact of consequence more or less probable. The alleged conflict and subsequent recusal were collateral procedural matters arising during the criminal case. They have no bearing on the elements of Plaintiffs' civil claims.

Even if the alleged recusal were somehow marginally relevant (which it is not), any reference to it would be unduly prejudicial and confusing under FRE 403. Jurors may wrongly infer that the existence of a recusal motion implies prosecutorial misconduct or bias—when in fact, there is no such evidence. Permitting this topic at trial risks a mini-trial on an issue already investigated and resolved, and it would invite speculation and improper inferences that could unfairly taint the defense.

Importantly, the California Attorney General's Office investigated the matter and determined that no conflict of interest existed. The AG declined to pursue any further action. That finding definitively resolved the issue. Allowing Plaintiffs to reference or suggest otherwise would serve no purpose other than to inject innuendo, confusion, and emotional appeal, which Rule 403 squarely prohibits.

Accordingly, Defendants respectfully request an order precluding Plaintiffs, their counsel, and all witnesses from making any reference—direct or indirect—to any alleged conflict of interest involving the Stanislaus County District Attorney's Office.

**DEFENDANTS' MOTION IN LIMINE**

## MOTION IN LIMINE – No. 12

**Preclude Introduction of Testimony or Evidence Regarding Settlement**

Federal Rule of Evidence 408 expressly prohibits the admission of evidence regarding settlements, settlement offers, discussions, or negotiations. Such evidence is inadmissible when offered to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement. This includes, but is not limited to:

- The fact that settlement discussions occurred;
- The content or terms of any offers or demands;
- Any party's willingness or unwillingness to settle;
- Or any characterization of a party's motives in proposing or rejecting settlement..

Settlement-related statements are not only barred by Rule 408, but are also irrelevant under Rule 401, as they do not tend to make any material fact more or less probable. Moreover, they are unduly prejudicial under Rule 403, as they risk causing jurors to draw improper inferences about a party's liability, reasonableness, or financial condition based solely on their participation (or lack thereof) in settlement negotiations.

Defendants therefore respectfully request an order precluding any reference to settlement communications, demands, offers, or negotiations, whether direct or implied, at any point during trial, including opening statements and witness testimony.

**DEFENDANTS' MOTION IN LIMINE**

**Limit Examination of Cory Brown Regarding Cell Tower Methodology to the facts known to him at the time he drafted the affidavit in support of the arrest warrant.**

*a.*      *Cory Brown Is Not an Expert Witness and Cannot Be Used as One*

To the extent Plaintiffs intend to question Cory Brown on:

- The science or technical methodology of cell site location analysis;
- Whether expert Ronald Goff's conclusions conformed to forensic mapping standards;
- Whether Brown's methodologies or conclusions would differ from those of Goff;
- Whether alternative interpretations of the data were more accurate;

Such questioning would elicit expert testimony under Federal Rule of Evidence 702. However, Cory Brown was not disclosed by Plaintiffs (or any party) as an expert, nor was he identified as a non-retained expert under Rule 26(a)(2). Accordingly, any attempt to elicit expert testimony from Brown must be excluded.

*b.*      *Post-Warrant Training Is Irrelevant and Prejudicial*

Plaintiffs seek to challenge Defendant Brown's use of cell phone tower data in a warrant affidavit, potentially using training he received after the warrant was submitted as a basis for their claims of judicial deception or fabrication. However, this subsequent training is irrelevant under FRE 401 and risks misleading the jury under FRE 403. Brown's post-warrant training has no bearing on whether his earlier use of cell site data was intentionally or recklessly misleading. Allowing Plaintiffs to reference that training would confuse the jury into judging the affidavit by hindsight standards, rather than the legal standards governing warrant validity. Additionally, Plaintiffs may attempt to use Brown's current understanding of cell tower technology to undermine the testimony of Ronald Goff, an expert witness in the underlying criminal case, to suggest that the Ramey warrant was a fabrication. This is incorrect for two reasons. First, Brown did not have any specialized training in the use of cell phone tower technology, and second, disagreement alone is not probative of deliberate fabrication or judicial deception.

Defendants respectfully request that the Court preclude Plaintiffs from:

**DEFENDANTS' MOTION IN LIMINE**

1

2          1.      Questioning Cory Brown about post-warrant training or education related to cell

3                  tower or call detail record analysis;

4          2.      Eliciting expert testimony from Brown, who was not disclosed as an expert under

5                  Rule 26;

6          3.      Asking Brown to comment on or explain any alleged disagreement with the opinions

7                  of expert Ronald Goff, or any other non-disclosed expert from the underlying

8                  criminal matter.

9          Such testimony is irrelevant, inadmissible under FRE 401, 403, 701, 702, and Rule 26, and

10    would result in undue prejudice and jury confusion. Brown may testify regarding his personal

11    observations and actions taken during the investigation, including what he understood at the time.

12    However, Plaintiffs may not use Brown to introduce technical or scientific opinion testimony about

13    cell tower data beyond the scope of his personal knowledge.

14         Brown may testify about what he personally observed and did at the time, but may not offer

15    retrospective expert opinions about methodologies or data interpretation.

16

17    Dated: April 2, 2025                        PORTER SCOTT

18                                                A PROFESSIONAL CORPORATION

19

20                                          By:    /s/ John R. Whitefleet
                                                  John R. Whitefleet
21                                                Carl L. Fessenden
                                                  Colin J. Nystrom
22                                                Attorneys for Defendants
                                                  COUNTY OF STANISLAUS, BIRGIT
23                                                FLADAGER, KIRK BUNCH, DALE
                                                  LINGERFELT, STEVE JACOBSON, and
24                                                MARLISSA FERREIRA

25

26

27

28

**DEFENDANTS' MOTION IN LIMINE**